BOARD OF HEALTH OF CITY OF CANTON ET AL. *v.* THE
STATE, EX REL. O'WESNEY.

(Decided February 16, 1931.)

*Mr. Russell H. Mack,* city solicitor, and *Mr. Earl Shadrack,* for plaintiffs in error.

*Messrs. Lynch, Day, Pontius & Lynch,* for defendant in error.

SHERICK, P. J. The petition of the relator, Benjamin O'Wesney, as filed in the court of common pleas, asks that the board of health of the city of Canton be required to certify to the city auditor that relator is entitled to be paid a certain sum of money as an employee of the board, and to require the auditor to issue his warrant therefor to the city treasurer.

It is alleged that the relator took and passed an examination before the civil service commission of the city of Canton, and that thereafter he was certified by that commission as eligible for appointment; that thereafter, on November 1, 1922, the relator was appointed meat inspector for the defendant board of health of the city of Canton, in which capacity he served until December 14, 1929, at which time charges were filed against him; that the

board of health heard these charges and dismissed the relator from its service, and in its order then made relator was given ten days in which to file explanations with the civil service commission of the city of Canton. Such explanations were filed with the commission and by it heard on April 19, 1930. The result of this review was that the charges were dismissed as being unfounded and untrue.

It is further pleaded that defendants have refused to pay him his salary earned from December 15, 1929, to April 19, 1930, and from June 1, 1930, to August 15, 1930. He has been paid for services rendered from April 19, 1930, to June 1, 1930. The amount claimed is $1,122.26, which relator asserts the defendants unlawfully withhold from him, and he claims that this sum is in the funds of the city of Canton to the credit of the Board of Health and is therefore available.

To this petition the defendants demurred, and the demurrer having been overruled, and the defendants not desiring to plead further, a peremptory writ of mandamus was issued as prayed for. It is now claimed that the trial court erred in its finding and order, in that the petition does not state a cause of action against the defendants for the reason that the relator was not an employee of the city of Canton, but an employee of the board of health of the city of Canton, which is a distinct political subdivision of the state, made so by the Hughes and Griswold (108 Ohio Laws, 236, 1085) Acts, independent of the city itself, and that the board had absolute control over its employees and the order of the civil service commission was made without authority and was a nullity.

It therefore appears that the question now before us is whether or not the civil service laws of this state, as now enacted, apply to persons in the employ of a city district board of health.

It appears from an examination of Section 4404 of the General Code, as the same existed prior to the enactment of the Hughes Act on April 17, 1919, 108 Ohio Laws, pt. 1, 236, that it provided in part that "the council of each municipality shall establish a board of health." And by this act it is plain that the state in the exercise of its police power delegated some of its power to municipal corporations, that is, that a city might create a municipal board of health, which board was then no doubt a part of the municipal government.

And now considering the first provision of the Hughes Act, which is Section 1261-16, General Code, we find that it provided that "for the purposes of local health administration the state shall be divided into health districts. Each city shall constitute a health district and for the purposes of this act shall be known as and hereinafter referred to as a city health district. The townships and villages in each county shall be combined into a health district and for the purposes of this act shall be known as and hereinafter referred to as a general health district. As hereinafter provided for, there may be a union of two general health districts or a union of a general health district and a city health district located within such district."

Again referring to Section 4404, General Code, as it now stands, amended by the Hughes Act, we note the injection of a new phrase in the first line thereof which is of much significance. The section

now reads: "The council of each city constituting a city health district, shall establish a board of health * * *." And from the repealing section of the Hughes Act, it appears that there was no saving clause with reference to existing municipal health boards, and we remark that the act further provided: "The district board of health hereby created shall exercise all the powers and perform all the duties now conferred and imposed by law upon the board of health of a municipality." Examination of Section 4405, General Code, discloses that if a municipality should fail or refuse to establish a health board, the state commissioner of health, with the approval of the public health council, may appoint a health commissioner therefor. From Section 1261-39, General Code, it is apparent that it was contemplated that municipal and general health districts were to be organized; and in fact from an examination of the whole act it is plain that the state retains an enlarged control over the districts and that many new powers and duties are reposed in the district board.

It therefore seems clear to this court that it was the intention of the Legislature to withdraw the power previously granted to cities in health matters; and well knowing that the health of any municipality was of vital concern to the whole state, and recognizing the fact that the matter of health administration had been indifferently administered in certain localities, it was intended to reserve that power to the state itself and to abolish the municipal boards of health as previously established.

Under Section 26 of Article II of the Constitution of this state, the Legislature undoubtedly had the

power to enact a general law for the purpose of safeguarding the health of the people of the state, and this is the holding of our Supreme Court in the case of *State, ex rel. Village of Cuyahoga Heights,* v. *Zangerle,* 103 Ohio St., 566, 134 N. E., 686, wherein the court had before it for consideration the Hughes and Griswold Acts.

The relator makes the point that the city of Canton had long applied civil service to the employees of its health department, and that he cannot be summarily discharged by the board. It is recognized in *Vansuch* v. *State, ex rel. Fetch,* 112 Ohio St., 688, 148 N. E., 232, and *State, ex rel. Miller,* v. *Witter,* 114 Ohio St., 122, 150 N. E., 431, that the office occupied by one under a civil service appointment may be abolished for the good of the service, and that is just what has happened in this instance . The fact that the city of Canton, since the going into effect of the Hughes Act, has labored under the impression that its health department was a municipal institution cannot aid the relator. We would refer to the case of *State, ex rel. Attorney General,* v. *Beacom,* 66 Ohio St., 491, 507, 64 N. E., 427, 90 Am. St. Rep., 599, wherein Judge Shauck, speaking for the court, quotes with approval from Cooley's Constitutional Limitations, 85 and 86, as follows, at page 507 of 66 Ohio State, 64 N. E., 427, 428: "Acquiescence for no length of time can legalize a clear usurpation of powers where the people have plainly expressed their will, and the constitution has appointed judicial tribunals to enforce it. A power is frequently yielded to merely because it is claimed, and it may be exercised for a long period in violation of the constitutional prohibition without the mischief which

the constitution was designed to guard against appearing, or without any one being sufficiently interested in the subject to raise the question, but these circumstances cannot be allowed to sanction a clear infraction of the constitution.''

The relator makes the contention that the geographical boundaries before and after the Hughes Act are the same, and that the city in both instances pays the health board's employees, and that the character of the relator's service is purely a municipal matter, and hence the act is in contravention of Section 3 of Article XVIII of the Constitution providing for municipal home rule in cities. To so hold in matters of public health would nullify Section 26 of Article II.

It is said in *State Board of Health* v. *City of Greenville,* 86 Ohio St., 1, at page 30, 98 N. E., 1019, 1024, Ann. Cas., 1913D, 52, that ''Cities are no longer enclosed by stone walls and separate and apart from the balance of the state,'' and the fact that the Legislature made choice of the limits of a city in the creation of health districts cannot make the matter of a city's health purely a municipal affair. We are conversant with the fact that slaughterhouses are frequently prohibited within municipal limits, and it would not be improper for an inspector of meats to visit and supervise the slaughter of animals, the meat thereof afterwards to be sold within the city not only to the inhabitants thereof but to urban residents whose patronage is earnestly solicited by the city's merchants.

The fact that a city through taxation must pay employees of its district board of health cannot make them municipal employees, for a city must pay its

portion of the cost of its health administration, and it is not inequitable that it should pay for that from which it in the first instance receives the most direct benefit; the fact that others indirectly reap some benefit must of necessity follow in practically all purposes for which taxes are gathered and expended. Surely the city of Canton reaps a benefit from the health administration carried on in Stark county for which its township and village taxpayers pay.

We hold the view that the *Zangerle case, supra,* is in the main decisive of the matters presented.

There remains but one further question to be considered, that is: Is the relator a civil service employee of the city or the health district? The answer may be found in Section [486-1a] 486-1, General Code. It is therein provided, in section 1: "The term 'civil service' includes all offices and positions of trust or employment in the service of the state and the counties, cities and city school districts thereof." A glance suggests the omission therefrom of city health districts. It must follow that the maxim, *"Expressio unius est exclusio alterius,"* has direct application.

It is therefore our conclusion that the relator is not an employee of the city, that he is not entitled to the emoluments of his office, which he did not hold under the provisions of the civil service law, that the board of health of the Canton city district had the power to remove him from office, and that the acts of the city's civil service commission in reviewing and dismissing the charges against the relator and its attempt at reinstatement of the relator to office were

of no force and effect in law and were a nullity. The writ should have been denied. The judgment of the trial court is therefore reversed.

*Judgment reversed.*

LEMERT and MONTGOMERY, JJ., concur.